UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DOROTHY M. VANEMAN,

       Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

     Defendant.

HONORABLE JEROME B. SIMANDLE

CIVIL NO. 04-4687

**OPINION**

APPEARANCES:

Philip Wolf, Esq.
WOLF AND BROWN, L.L.C.
228 Kings Highway East
Haddonfield, NJ 08033
    Attorney for Plaintiff

Gina N. Shin, Special AUSA
Susan Jane Reiss, Special AUSA
SOCIAL SECURITY ADMINISTRATION
OFFICE OF GENERAL COUNSEL
26 Federal Plaza
Suite 3904
New York, NY 10278
    Attorneys for Defendant

**SIMANDLE, District Judge:**

**I.   INTRODUCTION**

    This matter comes to the Court pursuant to 42 U.S.C. §
405(g)(2008) to review the decision of the Commissioner of the
Social Security Administration ("Commissioner" or "Defendant")
denying the request of Plaintiff, Dorothy Vaneman ("Plaintiff"),
for Disability Insurance Benefits ("DIB") under Sections 216(I)
and 223 of the Social Security Act, and for Supplemental Security

Income benefits ("SSI") under Section 1614(a)(3)(A) of the Act.
The Court must decide whether substantial evidence supports the
Commissioner's determination that Plaintiff is not disabled and
is able to perform substantial gainful work within the national
economy.  For the reasons explained below, the Court shall remand
the decision for a reevaluation of whether Plaintiff is disabled.
Although there is both supported and unsupported reasoning within
the Administrative Law Judge's opinion, the case will be remanded
because this Court cannot make a firm determination whether the
decision would have been the same using only the substantiated
reasons.

**II.  BACKGROUND**

   **A.   Procedural History**

   Plaintiff filed applications for disability insurance
benefits ("DIB") and supplemental security income benefits
("SSI") on October 31, 2002, alleging a disability onset date of
February 1, 2002.  Upon denial of those requests, Plaintiff
requested a hearing on the issue, which was held before
Administrative Law Judge Gerald Spitz ("the ALJ") on April 22,
2004.  The ALJ denied the requests for benefits in an opinion
dated May 12, 2004.

   Plaintiff filed a request for a review of the ALJ's
decision, but the Appeals Council denied the request on July 21,
2004.  Thus, the ALJ decision became the final decision of the

Commissioner.  Plaintiff then filed an appeal in this Court.  On December 12, 2005, the case was dismissed for failure to prosecute, but it was reopened on October 3, 2008.

### B.    The ALJ Opinion

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability, on February 1, 2002.  Next, when considering the severity of Plaintiff's impairment, the ALJ found that she had severe bilateral leg swelling.  However, the ALJ then held that Plaintiff's impairment did not meet or exceed the impairments listed in Appendix 1 of 20 C.F.R., Part 404, Subpart P.  (R. at 12.)  In the next step of the analysis, the ALJ examined Plaintiff's residual functional capacity, holding that Plaintiff could only perform sedentary exertion work.[1]  Due to the swelling and pains in Plaintiff's legs, the ALJ held that she could not perform the light exertion work of her past employment as a cashier.  However, the ALJ held that Plaintiff was not disabled,

---

[1]  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."  20 C.F.R. §§ 404.1567(a) and 416.967(a).  In sedentary work, walking and standing are required "occasionally," 20 C.F.R. §§ 404.1567(a) and 416.967(a), which means "occurring very little up to one-third of the time."  S.S.R. 96-8P.  Generally, this means in an eight-hour work day, standing or walking occur no more than two hours, and approximately six hours are spent sitting.  S.S.R. 96-8P.

because "there are a significant number of other jobs available in the national economy to which the claimant can make a vocational adjustment given her remaining occupational base." (R. at 15.)

In making his decision, the ALJ gave great weight to the residual functional capacity evaluation of the state agency medical expert, Dr. Sury Putcha, but afforded little weight to Plaintiff's treating physician, Dr. Gerald Vernon.  (R. at 14.) The ALJ explained that Dr. Putcha's opinion is "consistent with and supported by the longitudinal clinical signs and findings of record."  (Id.)  Dr. Putcha determined that Plaintiff could perform medium exertion work, lifting up to fifty pounds, and standing or walking six hours a day.  (Id.)  The ALJ noted that prior to the onset date of Plaintiff's disability, she was treated with support stockings, which were "controlling claimant's symptoms very well," and she did not require any further treatment.  (Id.)  Furthermore, Dr. Nithyashuba Khona found Plaintiff to be "completely normal" with full range of motion in a December, 2002 visit, and the ALJ determined that Dr. Putcha's evaluation was consistent with these findings.  (Id.) However, the ALJ determined that due to Plaintiff's trouble standing and walking, she should be limited to sedentary exertion work, rather than medium exertion work as Dr. Putcha recommended. (Id.)

4

The ALJ found that Dr. Vernon's report indicated that Plaintiff cannot perform even sedentary work, but rejected that conclusion.  (R. at 14.)  The ALJ gave little weight to Dr. Vernon because his opinions were "inconsistent with and unsupported by the clinical signs and findings."  (Id.)  The ALJ stated that Dr. Vernon's opinions were based on treatment notes from a visit for flu symptoms in February, 2002.  (Id.) Furthermore, in support of his decision, the ALJ found that "there are no clinical signs or findings documented during the relevant period to suggest any pathology or decreased functioning," and Dr. Vernon's opinion "completely lacks any support and is inconsistent with all of his treatment records." (Id.)

The ALJ determined that Plaintiff was not fully credible due to her "her minimal treatment regimen, and the degree of activities of daily living."  (R. at 14.)  The ALJ first supported this determination by describing Plaintiff's daily activities.  Second, the ALJ noted that Plaintiff "required no emergency room visits, inpatient hospitalization, or office visits with her treating physician during the relevant period." (R. at 13.)  Furthermore, he stated that Plaintiff's condition is "under good control with medication and support stockings and her condition is stable."  (Id.)  Thus, the ALJ treated Plaintiff's descriptions of her disabling pain as not fully credible.

C.   **Evidence in the Record**

    1.   <u>Plaintiff's Testimony</u>

Plaintiff Dorothy Vaneman testified at a hearing before the Administrative Law Judge on April 22, 2004.  Plaintiff was born on April 3, 1963 and has a high school education.  (R. at 185, 188-89.)  Until the alleged onset date of Plaintiff's disability, February 1, 2002, she worked as a label machine operator for Paulsboro Packaging.  (R. at 186, 198.)  Her additional relevant work experience includes employment as a cashier, salesperson, and shift runner at Eckerd's, Caldor, and Wawa respectively.  (R. at 192-93, 196.)  Plaintiff testified that all of those jobs required that she stand up to eight hours a day.  (R. at 192-98.)  Although the ALJ opinion states that Plantiff did not stop working due to her medical condition, Plaintiff testified that her employment was terminated due to absences, tardiness, and early departures that occurred as a result of the pain and swelling in her legs.  (R. at 13, 203.)  Plaintiff testified that upon the termination of her employment, her health insurance was discontinued, and she depended on her mother and son financially. (R. at 204.)

Plaintiff testified that use of her legs has been restricted since the swelling began in 2001.  (R. at 188, 206-07.)  According to her testimony, she is only able to walk a quarter of a block without stopping, and she cannot stand for more than an

hour.  (R. 206-07.)  When sitting in an upright chair, Plaintiff said she has to stand up and move after approximately a half hour.  (R. at 205.)  Plaintiff also testified that she has fallen about eight times from her weak legs and keeps a cane in case her knees give out.  (R. at 206.)  Furthermore, Plaintiff has gained weight from lack of exercise, wears baggy pants, and has trouble getting her shoes off at the end of the day.  (R. at 186-87, 202.)  Additionally, Plaintiff said she must spend approximately half the day elevating her legs at a sixty degree angle to keep the swelling at a minimum.  (R. at 205.)  However, Plaintiff said she has stopped using support stockings, because after her legs would swell, they became difficult to remove.  (R. at 204.)  Plaintiff also testified her legs cause her a tremendous amount of pain, like a "sledge hammer with a nail going through it, just slamming it through the knee," and this pain often causes her to wake-up six times a night.  (R. at 207.)

Plaintiff testified she can perform some household chores, such as dusting, which she performs while sitting.  (R. at 209.) Plaintiff's mother does most of the cooking.  (R. at 210.)  When Plaintiff cooks, approximately twice a week, she puts the food on the stove, and then sits for several minutes until she has to check on it.  (Id.)  In order to vacuum, Plaintiff bought a motorized vacuum that is easy to the touch, so that she does not have to stand much or put much pressure on the machine, and she

only vacuums one room at a time.  (R. at 209-10.)  Additionally,
when showering, Plaintiff leaves the door unlocked in case she
falls, so that her mother would be able to come in and help her.
(R. at 209.)

Plaintiff limits herself in driving because she does not
want her knee to give out and cause an accident.  (R. at 188.)
She testified that she has not driven in almost a year, because
"the kids have been doing all the driving." (Id.)  Furthermore,
when Plaintiff goes shopping, she says she leans on the cart as
she walks through an aisle, and then she stops and waits several
minutes before continuing.  (R. at 211.)

Plaintiff testified that she can no longer perform some
activities that she used to enjoy.  (R. at 208.)  For example,
Plaintiff stopped going camping and canoeing in 2002.  (Id.)
Moreover, Plaintiff used to walk to the park, but she no longer
can because she needs to stop every few minutes.  (Id.)

## 2.   Pre-February 1, 2002 Medical Evidence

Plaintiff first sought medical treatment for swelling in her
legs when she visited the Emergency Room at Underwood-Memorial
Hospital for cellulitis[2] of the bilateral lower extremities, and
was admitted to the hospital from May 3 to May 6, 2001.  (R. at
111-15.)  According to the Discharge Summary, doctors found a

---

[2]  Cellulitis is the "inflammation of subcutaneous, loose
connective tissues." Stedman's Medical Dictionary, "cellulitis"
(27th ed. 2000) (available on Westlaw).

8

"significant amount of edema"[3] in her legs and treated her with antibiotics.  (R. at 113.)

Approximately two months later, on July 17, 2001, Plaintiff again visited the hospital with red and swollen legs, and the medical reports note finding edema in the lower extremities.  (R. at 121-28.)  An emergency room physician prescribed Plaintiff medication and advised her to stay home from work with her legs elevated for several days.  (R. at 127.)  Throughout these medical procedures, Dr. Gerald Vernon remained her primary physician, who performed follow up visits and kept notes on Plaintiff's progress.  (R. at 118, 127, 145-60.)  Dr. Vernon's notes include reports from Plaintiff ranking the pain and discomfort level at "10/10," and document occasions when Plaintiff reported an inability to attend work as a result of the pain and swelling.  (R. at 149, 154.)

Plaintiff made an appointment to visit Dr. Vernon on September 7, 2001 concerning her swollen legs and feet.  (R. at 148.)  Dr. Vernon suggested treating the pain with support stockings and by elevating the legs.  (Id.)

### 3.   Post-February 1, 2002 Medical Evidence

After the alleged onset date of her disability, February 1, 2002, Plaintiff visited Dr. Vernon on February 6, 2002 for

---

[3]  Edema is an "accumulation of an excessive amount of watery fluid in cells or intercellular tissues."  Stedman's Medical Dictionary, "edema."

9

unrelated congestion and flu symptoms.  (R. at 144.)
Nevertheless, Dr. Vernon's treatment record for that visit shows
that Plaintiff had edema in her extremities.  (<u>Id.</u>)

Plaintiff was examined once by Dr. Nithyashuba Khona, on
December 16, 2002.  (R. at 161-63.)  Although Plaintiff's chief
complaint was for swelling in her legs, Dr. Khona found no edema.
(R. at 161, 163.)  Dr. Khona noted that claimant was not in
serious distress.  (R. at 162.)  Her gait and stance were normal
and she could make a full squat.  (<u>Id.</u>)  Plaintiff did not need
any devices to help walk and she could stand up from a chair
without difficulty.  (<u>Id.</u>)  Furthermore, Plaintiff did not
require help to change for her exam and could get on and off the
exam table with no trouble.  (<u>Id.</u>)  Additionally, Plaintiff had
full strength in her legs, full range of motion in her hips,
knees and ankles, and her joints were stable with no redness,
heat or swelling.  (R. at 163.)

According to Dr. Khona, Plaintiff reported that she can
perform many activities of daily living, including visiting
friends and family, watching television, listening to the radio,
doing crafts, sewing, and reading.  (R. at 161.)  She also
reported picking her son up from school, taking him to work, and
doing some food shopping.  (<u>Id.</u>)  The report does not make clear
details about her daily travels, such as how far away the school
and work are located or how she gets there.

Following the physical evaluation, Dr. Sury Putcha, a state agency medical expert, examined Dr. Khona's report to assess Plaintiff's physical residual functional capacity on January 8, 2003.  (R. at 164-69.)  Dr. Putcha found "no significant functional impairment."  (R. at 165.)  He determined that Plaintiff can lift and carry fifty pounds occasionally, twenty-five pounds frequently, and that Plaintiff can sit, stand, or walk about six hours in an eight-hour workday.  (Id.)

On March 31, 2004, Plaintiff visited Dr. Vernon's office, and a report on her residual functional capacity was prepared on April 6, 2004.  (R. at 170-75.)  The questionnaire was submitted by Dr. Vernon's office, but the name and signature on the form is from Rosemary Hoffman, a physician's assistant.  (Id.)  The report noted Plaintiff complained of daily throbbing pain in both knees when walking and standing, with the pain ranging between eight to ten points on a ten point scale.  (R. at 170.) Plaintiff's complaints of pain were supported by clinical findings of "+4 edema" in her mid-shins and knees, grinding in her patella, and tenderness in her knees, shins, and medial and lateral joints.  (R. at 171.)  The report found Plaintiff is only able to walk less than a city block without rest, and she can only continuously sit for one hour or stand for five minutes. (R. at 172.)  In an eight-hour workday, according to the report, Plaintiff can only sit a total of four hours and stand less than

11

two hours, and she needs to have her legs elevated sixty degrees for half that time.  (R. at 172-73.)  The report also concluded that Plaintiff can only occasionally carry ten pounds.  (R. at 174.)  Furthermore, according to the report, Plaintiff's impairments are likely to produce "good days" and "bad days," and she may need to miss work due to her condition approximately three times per month.  (Id.)

## III. DISCUSSION

### A. Disability Defined

The Social Security Act defines "disability," for purposes of an individual's entitlement to DIB and SSI benefits, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a claimant qualifies as disabled,

> [O]nly if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

12

Substantial gainful activity is "work that - (a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.  This definition presupposes a regular, continuing, and sustained ability to perform such work.  Kangas v. Bowen, 823 F.2d 775, 778 (3d Cir. 1987).

The Commissioner has promulgated regulations that determine disability by application of a five-step sequential analysis codified in 20 C.F.R. § 404.1520.  The Commissioner evaluates each case, step-by-step, until a finding of "disabled" or "not disabled" is obtained, 20 C.F.R. § 404.1520(a).  The five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, the claimant is "not disabled."

2. If the claimant does not suffer from a "severe impairment," the claimant is "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant is "disabled."

4. If the claimant can still perform work the claimant has done in the past ("past relevant work"), despite the severe impairment, the claimant is "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education and past work experience to determine whether or not the claimant is capable of performing other work which exists in the national economy.  If the claimant is incapable, a finding of disability will be entered. On the other hand, if the

13

claimant can perform other work, the claimant will be
found not to be disabled.

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is
dependent upon a finding that the claimant is incapable of
performing some other type of substantial gainful work in the
national economy.

In the first four steps of the analysis, the burden is on
the claimant to prove every element of her claim by a
preponderance of the evidence.  In the final step, however, the
Commissioner bears the burden of proving that work is available
for the petitioner:  "Once a claimant has proved that [s]he is
unable to perform [her] former job, the burden shifts to the
Commissioner to prove that there is some other kind of
substantial gainful employment [s]he is able to perform."
Kangas, 823 F.2d at 777.  See Wallace v. Sec'y of Health & Human
Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).

The final step is important here because the ALJ determined
that Plaintiff is unable to perform her past relevant work, and
therefore the burden shifts to the Commissioner to show
availability of other work in the national economy.

**B.   Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial
review of the Commissioner's decision to deny a complainant's
application for Social Security benefits.  Ventura v. Shalala, 55
F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the

14

Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  "Substantial evidence" means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  Thus, substantial evidence may be slightly less than a preponderance. See Hanusiewicz v. Bowen, 678 F. Supp. 474, 476 (D.N.J. 1988).

Some types of evidence will not be "substantial."  For example:

> [A] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g. that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Wallace, 722 F.2d at 1153 (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).

This Court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record

as a whole to determine whether the conclusions reached
are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  A district
court is not "empowered to weigh the evidence or substitute its
conclusions for those of the fact-finder."  Williams, 970 F.2d at
1182.  However, an ALJ need not explicitly discuss every piece of
relevant evidence in his decision.  See Fargnoli v. Massanari,
247 F.3d at 42.

Moreover, apart from the substantial evidence inquiry, a
reviewing court is entitled to satisfy itself that the
Commissioner arrived at his decision by application of the proper
legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker,
721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp.
791, 793 (D.N.J. 1981).

**C.   Analysis**

    1.   <u>Whether the ALJ Improperly Rejected the Opinion of
Treating Physician Gerald Vernon</u>

Plaintiff claims the ALJ erred by failing to give sufficient
weight to the opinion of her treating physician, Dr. Gerald
Vernon,[4] that Plaintiff's residual functional capacity was less

---

[4]   There is a factual dispute in the record regarding who
prepared Dr. Vernon's residual functional capacity determination.
The report came from Dr. Vernon's office, but the signature on
the form was Rosemary Hoffman's, a physician's assistant.  (R. at
170-75.)  The ALJ did not consider this question and appears to
have assumed that Dr. Vernon himself made the determination.  On
remand, the ALJ must determine who made the residual functional
capacity assessment, and determine what weight should be given to
that report in light of this finding.

than sedentary.  The ALJ rejected Dr. Vernon's specific findings as "inconsistent with and unsupported by the clinical signs and findings," and instead ruled that Plaintiff could perform sedentary exertion work.  (R. at 14.)  The Court finds the ALJ should reconsider the amount of weight afforded to Dr. Vernon's opinion, because Dr. Vernon's current capacity evaluation is consistent with his own prior findings, and his opinions are supported by clinical findings.  Furthermore, the ALJ incorrectly assumed that Dr. Vernon's opinion was based on an irrelevant office visit.

The Third Circuit and federal regulations give great weight to the opinions of treating physicians:

> [The Social Security Administration] give[s] more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2); see also Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993); Kane v. Heckler, 776 F.2d 1130, 1135 (3d Cir. 1985).  The opinion of a treating physician will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(d)(2) (1995).  The better the

explanation a source provides for an opinion, the more weight an ALJ should give that opinion. 20 C.F.R. § 404.1527(d)(3). The ALJ should evaluate the degree to which these opinions consider all of the pertinent evidence in Plaintiff's claim, including opinions of treating and examining sources. Id.

The ALJ cannot reject a treating physician's testimony in the absence of contradictory medical evidence. See Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir. 1991). However, an ALJ can reject the opinion of a treating physician if he or she explains on the record the reasons for doing so. See Allen v. Bowen, 881 F.2d 37, 41 (3d Cir. 1989); Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1983). When opinions offered by treating physicians fail to explain discrepancies in plaintiff's medical history, the ALJ can determine that those opinions are not controlling. Wright v. Sullivan, 900 F.2d 675, 683 (3d Cir. 1990); Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985).

Although the diagnosis of a treating physician is considered as to whether a claimant is "disabled," the ALJ has the final responsibility to determine Plaintiff's residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1527(e)(2).

In this case, the ALJ gave little weight to Dr. Vernon's opinions for three reasons. First, the ALJ held that Dr. Vernon's recent findings were inconsistent with the doctor's

earlier findings.  In fact, Dr. Vernon's current opinion is fully supported by his earlier findings.  Plaintiff visited the hospital twice in 2001 for cellulitis, and was admitted for approximately three days in May, 2001.  (R. at 111-15, 121-28.) Dr. Vernon performed follow up visits and kept progress notes on her condition, which consistently noted that Plaintiff was in pain and had swollen, red legs.  (R. at 145-60.)  After first onset of Plaintiff's condition, Dr. Vernon noted in May, 2001 that Plaintiff had a "significant amount of edema in the lower extremities."  (R. at 112.)  Hospital records confirmed this statement in July, 2001, noting that Plaintiff had peripheral edema in the bilateral lower extremities.  (R. at 125.)  Dr. Vernon's notes show Plaintiff suffered pain at a level of "10/10" and he documents occasions when Plaintiff left work early or was absent because of shooting pain and discomfort when standing. (R. at 149, 154.)  Furthermore, in September, 2001, Plaintiff again visited Dr. Vernon, and he suggested elevating her legs and wearing support stockings to help decrease the swelling.  (R. at 148.)

When Dr. Vernon assessed Plaintiff's residual functional capacity in April, 2004, his findings were consistent with his earlier evaluations as well as current clinical findings.  On the questionnaire, Plaintiff ranks her pain level as an eight to ten on a ten-point scale, which is of a similar level as her earlier

pain assessment.  (R. at 170.)  Dr. Vernon's clinical findings include edema in her legs, which both he and the hospital found years prior.  (R. at 170-71.)  Dr. Vernon limited Plaintiff's capacity to less than sedentary work as a result of her difficulty standing, walking, and sitting for periods of time, as well as the need to elevate her legs half of the day.  (R. at 170-75.)  This finding does not conflict with his earlier recommendation of leg elevation, as the diagnosis is the same. (Id.)  Additionally, his earlier progress notes mention Plaintiff having trouble working due to high amounts of pain, and this again is consistent with his finding that she cannot perform sedentary work.  (R. at 154.)  Plaintiff needs to be able to sit, elevate her legs, and have the ability to stand up and walk whenever she feels discomfort.  (R. at 170-75.)  Thus, the ALJ's dismissal of Dr. Vernon's opinion on the ground that it was inconsistent with his prior findings is not supported by substantial evidence.  The record shows that Dr. Vernon's prior treatment records were congruous with his residual functional capacity assessment.

Second, the ALJ discounted Dr. Vernon's opinion because, according to the ALJ, it was based solely on his treatment notes from Plaintiff's visit for flu symptoms on February 6, 2002, "the last time the claimant saw Dr. Vernon."  (R. at 14.)  That finding is inaccurate, because Dr. Vernon's records indicate that

Plaintiff was examined on March 31, 2004, just six days before his determination of her functional capacity.  (R. at 170.) Furthermore, it appears the March, 2004 visit was the basis for the residual functional capacity determination, as the date is written on the form next to the words "current office visit." (Id.)  The record suggests Dr. Vernon examined Plaintiff immediately prior to determining her residual functional capacity, rather than basing his opinion on treatment records from a flu visit two years earlier, and the  ALJ's determination that Dr. Vernon's assessment is unpersuasive is therefore not supported by substantial evidence.  Moreover, although the ALJ declared the February, 2002 flu visit irrelevant and said no evidence of her disabling condition exists from the relevant period, Dr. Vernon documented that Plaintiff had edema in her extremities during that same 2002 visit, which was within the relevant period.  (R. at 144.)

Third, the ALJ gave little weight to Dr. Vernon's determination, because there is no evidence "documented during the relevant period to suggest any pathology or decreased functioning."  (R. at 14.)  As previously discussed, there is evidence of Plaintiff's pathology during the relevant period. Moreover, Plaintiff explained through her counsel and via an affidavit that the reason minimal evidence exists for the relevant period is that she could not afford treatment due to her

lack of insurance.  (R. at 66, 184.)  Plaintiff testified that her health insurance lapsed when she lost her job in February, 2002.  (R. at 204.)  It is plausible that Plaintiff's condition could have progressed to a more severe state during the two years since she last visited Dr. Vernon, but since she had no insurance, there are no records on the matter.  The ALJ cannot assume a Plaintiff is disabled for failure to seek treatment without considering her lack of insurance or income.  Newell v. Comm'r of Soc. Security, 347 F. 3d 541, 547 (3d Cir. 2003).

The ALJ used Dr. Putcha's capacity finding of medium exertion work to justify the determination that Dr. Vernon's assessment was not supported by clinical findings.  (R. at 14.) Although the two residual functional capacity assessments differ, this does not permit the ALJ to choose the report of Dr. Putcha over Dr. Vernon without sufficient justification.  As the Third Circuit has held, the court should generally give greater weight to a treating physician's opinions.  Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).  The ALJ affords greater weight to Dr. Putcha's opinion because the ALJ erroneously concludes that Dr. Putcha's assessment was based on the only medical evaluation within the relevant period.  (R. at 14.)  However, as previously discussed, Dr. Vernon's clinical findings and ultimate assessment were based on a visit on March 31, 2004, rather than the February

6, 2002 visit.  (R. at 170.)  Therefore, the reason the ALJ afforded greater weight to Dr. Putcha's opinion is incorrect.

Furthermore, the ALJ accorded Dr. Khona's medical evidence greater weight than Dr. Vernon's clinical findings because, according to the ALJ, Dr. Vernon's findings were not consistent with the evidence.  Dr. Khona evaluated Plaintiff one time, in December, 2002.  (R. at 161.)  Although Dr. Khona's findings and Dr. Vernon's evaluations were different, the results were not necessarily inconsistent.  According to Dr. Vernon's findings, Plaintiff is likely to have "good days" and "bad days."  (R. at 174.)  Since Plaintiff visited Dr. Vernon over several years and only visited Dr. Khona once, it is possible that Plaintiff was just having a "good day" on the day Dr. Khona performed his examination.  Though Dr. Khona's report includes a list of Plaintiff's daily activities, little detail is provided.  Many of the activities (watching television, doing crafts, listening to the radio, reading and sewing) do not generally involve physical exertion nor do they necessarily require prolonged sitting, and they may allow for elevating legs.  As to taking her sons to school and work, and going shopping, without details it is impossible to know what level of movement was required or how she accomplished these tasks.  Thus, Dr. Vernon's findings were not automatically inconsistent as the ALJ assumed.

In this case, the ALJ erred by rejecting Dr. Vernon's finding that Plaintiff had less than sedentary residual functional capacity because the ALJ's findings were not supported by substantial evidence.

> 2.   Whether the ALJ Used Insufficient Grounds in Finding Plaintiff Not Fully Credible

Plaintiff argues the ALJ's finding that Plaintiff is not fully credible is not supported by substantial evidence.  The ALJ determined that Plaintiff was excessive in describing her pain and symptoms, and that her testimony was not credible because of her "minimal treatment regimen, and the degree of activities of daily living."  (R. at 14.)  The Court finds, for the reasons to be discussed, that the ALJ used a combination of supported and unsupported grounds to explain why he doubted Plaintiff's credibility.

When evaluating the existence of a disability, the ALJ is required to give serious consideration to the claimant's subjective complaints of pain, even though those assertions are not fully confirmed by the objective medical evidence, Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986), but the ALJ is not bound to accept unquestioningly the credibility of such subjective evidence.  Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  It is within the ALJ's discretion "to evaluate the credibility of a claimant and to arrive at an independent judgment in light of medical findings and other evidence

regarding the true extent of the pain alleged by the claimant."
Brown v. Schweiker, 562 F. Supp. 284, 287 (E.D. Pa. 1983)
(quoting Bolton v. Sec'y of HHS, 504 F. Supp. 288 (E.D.N.Y.
1980)).  However, subjective symptoms of pain can be validated if
observed and treated over time by a physician.  Dorf v. Bowen,
794 F.2d 896 (3d Cir. 1986).  While this Court declines to
substitute its own determination of credibility for that of the
ALJ, see Wier v. Heckler, 734 F.2d 955, 962 (3d Cir. 1984), the
ALJ must indicate the basis for conclusions that the claimant's
testimony is not credible and those reasons must be supported by
substantial evidence.  Cotter v. Harris, 642 F.2d 700 (3d Cir.
1981).

In this case, the ALJ found that Plaintiff was not fully
credible because her descriptions of pain were not consistent
with her daily activities and her lack of treatment during the
relevant period.  (R. at 13-14.)  However, Plaintiff provides an
explanation for not seeking treatment that the ALJ failed to
consider.  Plaintiff argues that her treatment regimen was
limited because she lacked insurance and income, making it too
expensive to visit the doctor.  (R. at 204.)  Plaintiff claimed
her insurance lapsed after she lost her job in February, 2002,
and she lost her job because she was unable to tolerate a full
workday, routinely leaving early, arriving tardy, or staying home

26

altogether.[5]  (R. at 203-04.)  Unemployed, Plaintiff testified

that she has no income and financially depends on her mother and

son.  (R. at 204.)  Consistent with this testimony, the record

reflects that Plaintiff made frequent visits to the doctor until

February, 2002, when she lost her job, at which point those

visits suddenly stopped.

     In making a credibility determination, an ALJ can consider

that a claimant has not sought medical treatment for pain.  Mason

v. Shalala, 994 F.2d 1058, 1068 (3d Cir. 1992).  However, the

Third Circuit has held the ALJ should not use lack of medical

treatment as evidence of absence of a disability without

considering other explanations for the limited medical visits:

> [T]he adjudicator must not draw any inferences about an
> individual's symptoms and their functional effects from
> a failure to seek or pursue regular medical treatment
> without first considering any explanations that the
> individual may provide, or other information in the case
> record, that may explain infrequent or irregular medical
> visits or failure to seek medical treatment.

Newell v. Comm'r of Soc. Security, 347 F.3d 541, 547 (3d Cir.

2003).  In Newell, the ALJ denied Plaintiff disability benefits

because there was no evidence Plaintiff sought regular medical

treatment.  Id.  Newell argued that she did not seek treatment

because she was uninsured and could not afford treatment.  Id.

---

[5]  The ALJ discounts the claim that Plaintiff's former
employer terminated her position due to her disability.  Instead,
the ALJ stated that Plaintiff stopped working, "but this was not
due to her medical condition."  (R. at 13.)  The Court can find
no evidence to support this conclusion.

The Third Circuit held that the lack of medical evidence "did not provide an adequate basis to support a conclusion that Newell was not disabled."   Id.

In this case, the ALJ acknowledged the fact that Plaintiff has no income or medical insurance in his summary of her testimony, but he failed to consider it in his credibility ruling.  (R. at 13-14.)  In his explanation, the ALJ described how Plaintiff "required no emergency room visits, inpatient hospitalization, or office visits with her treating physician during the relevant period."  (R. at 13.)  The ALJ further mentioned that "[t]here is no evidence of symptom exacerbation during the relevant period.  Other than medication and support stockings, the claimant requires no treatment."  (Id.)  The only basis for the ALJ's statement that Plaintiff does not require treatment is that she has not received much treatment.  However, as in Newell, the ALJ cannot accurately address Plaintiff's disability status without first considering her lack of insurance, and the ALJ has not indicated that he took Plaintiff's explanation into account when adjudicating the case.  The ALJ erred by concluding that Plaintiff's description of her disabling pain lacks credibility because he failed to consider Plaintiff's claimed inability to afford treatment.  See Newell, 347 F.3d at 547.

3.   <u>Whether Remand is Required</u>

Having found unsupported reasons in ALJ's opinion, the Court must decide whether those errors justify remand.  As discussed, some of the ALJ's reasons for affording little weight to Dr. Vernon's opinions and for discrediting Plaintiff's testimony were unsupported by the evidence.  Nevertheless, the ALJ does provide a substantiated reason for declaring Plaintiff not fully credible:  the degree of daily activities Plaintiff performs. There is evidence, though it lacks detail, that as of December, 2002, Plaintiff could perform all the activities of daily living, including taking her sons to school and work, food shopping, watching television, listening to the radio, and reading.  (R. at 162.)  Moreover, a substantiated reason also exists to support a decision to disagree with Dr. Vernon's opinion.  As the ALJ found and the record confirms, Dr. Putcha's assessment relying on Dr. Khona's evaluation is inconsistent with Dr. Vernon's findings.

When there is an error in the ALJ's reasoning, courts should affirm the decision "if there is 'no question that he would have reached the same result notwithstanding his initial error.'" <u>Foley v. Barnhart</u>, 432 F. Supp. 2d 465, 479 (M.D. Pa. 2005) (quoting <u>Mickles v. Shalala</u>, 29 F.3d 918, 921 (4th Cir. 1994)). "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different

29

result." <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989).
However, in a District Court case from Pennsylvania, when the ALJ
did not properly consider the treating physician's opinion, the
court remanded the case, holding that "we cannot say there is no
question that a different result would not have been reached if
the ALJ properly analyzed the evidence." <u>Foley</u>, 432 F. Supp. 2d
at 479.

Although in this case there is some evidence that may lead
to the same result on remand, there is no certainty the ALJ will
reach the same outcome.  When reviewing the case, the ALJ will
reconsider the weight of Dr. Vernon's opinions, the credibility
of Plaintiff's testimony, and the Plaintiff's claimed inability
to afford the treatment she needed.  As in <u>Foley</u>, this Court must
remand the case, because there is a possibility that the ALJ will
reach a different decision when evaluating the decision in this
light.[6]

---

[6]  Though not raised by Plaintiff on appeal, the Court
observes that the ALJ does not provide a function by function
analysis of Plaintiff's physical abilities, such as walking,
standing, sitting, or carrying, as required by federal
regulations.  S.S.R. 96-8P; 20 C.F.R. § 404.1545.  "The [residual
functional capacity] assessment must first identify the
individual's limitations or restrictions and assess his or her
work-related abilities on a function by function basis . . . Only
after that may [residual functional capacity] be expressed in
terms of the exertion levels of work."  S.S.R. 96-8P.
The Court reminds the ALJ on remand to provide a description of
Plaintiff's functional abilities.

## IV.   CONCLUSION

For the reasons explained above, the Court shall remand this matter to Social Security Administration for a redetermination of Plaintiff's residual functional capacity, consistent with this Court's opinion.  An appropriate Order shall be entered.


**July 14, 2009**                              **s/ Jerome B. Simandle**
Date                                           JEROME B. SIMANDLE
                                               United States District Judge

31